IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION



**AXCESS MEDICAL CLINIC, INC.;
KENNETH CHARLES KNIGHT and
FITZHUGH LEE NEAL, JR., M.D.**                               **PLAINTIFFS**

VS.                                                           CAUSE NO. 3:15cv307WHB-JCG

**MISSISSIPPI STATE BOARD OF
MEDICAL LICENSURE; and
JOHN DOES 1-10**                                              **DEFENDANTS**

## COMPLAINT

**COME NOW,** Axcess Medical Clinic, Inc., Kenneth Charles Knight, and Fitzhugh Lee Neal, Jr., M.D., and in support of their claims against Defendant herein, would state as follows:

### PARTIES

1.

Axcess Medical Clinic, Inc., is a Mississippi corporation and at all times relevant hereto maintained its principal place of business at 215 Telly Road, Picayune, Mississippi.

2.

At all times relevant hereto Fitzhugh Lee Neal, Jr., M.D., was a citizen of the State of Mississippi, a physician licensed by the Mississippi State Board of Medical Licensure and the majority shareholder in Axcess Medical Clinic, Inc..

3.

Kenneth Charles Knight is a citizen of the State of Louisiana and is a shareholder in Axcess Medical Clinic, Inc. At all times relevant hereto, Mr. Knight was the owner, member, or shareholder the clinic operating at 215 Telly Road, Picayune, Mississippi.

4.

The Mississippi State Board of Medical Licensure is an agency of the State of Mississippi. It may be served with process by service upon its Executive Director, H. Vann Craig, M.D., whose business address is 1867 Crane Ridge Dr., Suite 200 N., Jackson, MS. 39216, or upon Jim Hood, the Attorney General of Mississippi, 550 High Street, Suite 1200, Jackson, MS., 39201.

5.

The Mississippi State Board of Medical Licensure is hereinafter referred to as the "Board."

6.

John Does 1-10 are persons or entities that may have participated in the conduct described herein and who are currently unknown to Plaintiffs.

**JURISDICTION AND VENUE**

7.

This Court has jurisdiction in this matter pursuant to 15 U.S.C.A. § 15 and 28 U.S.C.A. § 1331 as this is a civil action arising under the laws and Constitution of the United States, and Plaintiffs seek injunctive, declaratory and other relief pursuant to 15 U.S.C.A. § 1.

8.

This action involves an antitrust violation of § 1 of the Sherman Act. This action involves damages to Plaintiffs resulting from antitrust violations for: the exclusion of non-physicians from owning certain medical clinics; placing restrictions on the physician practice of medicine that do not apply equally to all physicians; placing restrictions on the physician practice of medicine that are beyond the statutory authority of the Mississippi Board of Medical Licensure; enforcing rules and regulations not properly promulgated or enacted resulting in anticompetitive and unfair methods of competition. This action further seeks a declaration that the Administrative Rules described herein are contrary to Mississippi law, unenforceable, and should be declared void.

9.

Venue lies within this district pursuant to 28 U.S.C. § 1391 as the Defendants' office is located within this judicial district and the acts or omissions giving rise to these claims occurred within this district.

## FACTS

10.

Plaintiff Knight owns and operates medical clinics in the State of Louisiana. On January 5, 2010, Mr. Knight formed Axcess Medical Clinic, Inc. in accordance with the laws of the State of Mississippi (hereinafter "Axcess"). The business purpose of Axcess was to operate a medical clinic located at 215 Telly Road, Picayune, Mississippi.

11.

Axcess Medical Clinic, Inc. was formed in accordance with the Mississippi Business Corporation Act codified as Miss. Code Ann. § 79-4-101, *et seq.* As such, Axcess Medical Clinic, Inc. may have as a shareholder any person or entity allowed by the Business Corporation

Act. Axcess is not a professional corporation as defined by Miss. Code Ann. §79-10-1, *et seq.*, the Mississippi Professional Corporation Act. Accordingly, there are no legal limitations on persons who may be shareholders in the corporation.

12.

The clinic was opened in 2010 and was granted a Privilege Tax License to conduct business as a "Medical Office" in the State of Mississippi. The clinic operated in accordance with the laws of the State of Mississippi and in accordance with the requirements of the State Board of Medical Licensure.

13.

In reliance upon the laws of the State of Mississippi, Mr. Knight entered into numerous contracts necessary for the operation of Axcess which is a medical clinic that treats patients suffering from chronic pain.

14.

On March 25, 2011, the Board filed an Amended Chapter 25 of the Mississippi State Board of Medical Licensure Rules and Regulations (hereinafter the "Rules"). As per that filing, the Amendments became the Administrative Code, effective thirty (30) days from said filing. A copy of pertinent portions of the amended version is attached as Exhibit "A."

15.

The amendment to Chapter 25 purports to require that any clinic that is considered a "pain management clinic", as defined by the Board, must be owned by a hospital or licensed physician, and excludes non-physicians from owning such clinics. *Id.,* Rule 1.15. The amended rule also requires that a pain management clinic register with the Board before it may operate in

Mississippi. As shown by the original Pain Management Clinic Registration application, a copy of which is attached as Exhibit "B," if all of the owners of the clinic were not physicians, the applicant was not eligible for certification.

16.

The Board is made up of nine practicing physicians, and the Board's definition and regulations affecting a "pain management medical practice" were not reviewed by a state supervisor with veto authority before being enacted.

17.

The Board defined a "pain management clinic" as defined by the March 25, 2011 version of Chapter 25 of the Board Rules is a "public or privately owned facility for which the majority (50% or more) of the patients are issued, on a monthly basis, a prescription for opioids, barbiturates, benzodiazepines, carisoprodol, butalbital compounds, or tramadol. Exhibit "A".

18.

The medical practice conducted by Axcess met this definition. Because Mr. Knight is not a licensed physician and Axcess was not owned by a hospital, the amended rule precluded him from owning and operating Axcess.

19.

Having received no adequate notice of the implementation of the amended, vague, and ambiguous Rules, Mr. Knight requested a Declaratory Opinion from the Board in accordance with Board of Medical Licensure Rules and Regulations and in accordance with the Mississippi Administrative Procedures Law. Specifically, the request inquired as to whether Axcess would be given "grandfather" consideration since the clinic was already in operation and in compliance

with the laws prior to the amended rules. In violation of the law and its Rules, the Board failed to respond to the request. Mr. Knight was forced to sell his interest in Axcess to a physician in November 2011 in order to salvage his investment, to maintain jobs for the employees of the clinic, and to continue providing needed medical care to its patients. The physician later rescinded the purchase, and the shares reverted to Mr. Knight in January 2012.

20.

Without prior notice or amendment to the Rules, the Board revised its Pain Management Clinic Registration application prior to January 2012. The revised application removed the language that notified the applicant that *all owners* of a pain management clinic must be physicians but continued to inform the applicant that unless he/she was a physician, the applicant was not eligible to "own and operate" a pain management clinic.

21.

Upon regaining ownership of Axcess, the Board informed Mr. Knight that in order to obtain certification as a pain management clinic, a physician must own a *majority interest* in the clinic. In order to prevent closure of the clinic, in February of 2012 Mr. Knight was forced to divest his majority interest in Axcess without compensation, so that Dr. Neal could become the majority owner of Axcess. The registration application for certification as a pain management clinic was then submitted to the Board, along with the requested proof of ownership, and Axcess was certified by the Board on February 28, 2012. The registration was to expire on June 30, 2012.

22.

On or about April 2, 2012, the Board filed an Administrative Procedures Notice Filing of a compilation of the Board's Rules and Regulations. As per that filing, the Rules and Regulations became the Administrative Code, effective thirty (30) days from said filing. The March 2011 amendments to Chapter 25 of the Rules and Regulations became the Administrative Code, Title 30: Professions and Occupations; Part 2640 Chapter 1: Rules Pertaining to Prescribing, Administering, and Dispensing of Medication, Rules 1.2 and 1.14 effecting the operation and ownership of a "pain management clinic."

23.

On or about June 18, 2012, Dr. Neal, on behalf of Axcess, submitted a request for renewal of the clinic registration from the Board. By letter dated August 3, 2012, the Board requested additional information relative to Dr. Neal's training, as well as IRS tax forms necessary to "indicate proof of ownership." Although the Board had previously accepted the proof of ownership and certified Axcess, it demanded additional proof of ownership before certifying the clinic. Axcess, through counsel, provided all information possible to show proof of ownership by Dr. Neal in Axcess. The Board demanded tax returns to show proof of ownership. The Board had also previously certified Axcess without requesting proof of pain management training or certification from Dr. Neal. At the time of the request there were no specific training or certification requirements to practice pain management.

24.

By letter dated April 24, 2013 the Board notified Dr. Neal that he was to appear before the Board on May 15, 2013 to "show cause" why the Board should not deny the application for registration of his practice as a "pain management clinic." This appearance was described as an

"informal" conference. When Dr. Neal appeared before the Board on May 15, 2013, he was required to go forward with the hearing despite Dr. Neal's notification to the Board Members that he was represented by counsel who was temporarily detained. The Board Members, acting as agents of the Board, accused Dr. Neal of practicing pain management without the proper qualifications. The Board members accused Dr. Neal of such conduct when, in fact, he was practicing in accordance with the Rules as written on May 15, 2013. The Board Members, instructed Dr. Neal to immediately reduce the percentage of his pain management patients to a number below 50% of his total patients. Because approximately one hundred percent of Dr. Neal's patient census fell within the Board's definition of pain management patients, Axcess was forced to close the clinic on May 15 under threat from the Board Members to revoke Dr. Neal's license. The Board Members knew that such action would result in closure of the clinic.

25.

At no time during the registration process or during the May 15, 2013 hearing did the Board request a copy of the tax return Dr. Neal brought to the meeting to establish ownership of Axcess. By letter dated May 20, 2013 the Board, demanded production of the 2012 tax return to show proof of ownership and again ordered him to reduce his pain management patients to below fifty percent of his practice until it was produced. On May 31, 2013, counsel for Dr. Neal submitted the tax return and threatened suit against the Board due to its failure to issue the registration and due to it acting outside its statutory authority.

26.

The Board, without cause, failed to issue the Registration Certificate until June 26, 2013. The Board issued the Certificate with no change in Dr. Neal's status with respect to his

qualifications. As a result of this action, Axcess was closed from May 15, 2013 until June 26, 2013. When Axcess reopened it had lost a significant portion of its patient base which it was unable to ever fully recover from.

27.

On September 24, 2013 the Board again made an Administrative Procedures Notice Filing indicating the amendments to Rules 1.2 and 1.15 were adopted with changes. According to the Board these amendments became final as of October 24, 2013. This version of the Administrative Code is attached in pertinent part as Exhibit "C." The amendments place significant new education/certification requirements on physicians with a "pain management medical practice" as arbitrarily defined by the Board outside the scope of their statutory authority.

28.

As a result of the new restrictions and education/certification requirements, in the amendments to Rule 1.15, Axcess was forced to close resulting in significant damages to Plaintiffs including but not limited to lost revenues.

### THE MISSISSIPPI BOARD OF MEDICAL LICENSURE IS ACTING TO SUPPRESS COMPETITION

29.

Plaintiffs incorporate and restate the allegations of each preceding paragraph. The State Board of Medical Licensure was created by the Mississippi Legislature, and its function and powers are codified at Mississippi Code Annotated § 73-43-1, *et seq.* The State Board of Medical Licensure (the "Board") has been granted certain powers and responsibilities as set forth at Miss. Code Ann. § 73-43-11. However, Miss Code Ann. §73-43-11 does not provide the

Board with authority to dictate the ownership of a medical clinic and no authority exists to require a legal shareholder of a valid corporation to divest his ownership in the corporation *ex post facto*.

30.

The Board has significant market power, as the agency with statutory authority under, Miss Code Ann. §73-43-11 to set policies and professional standards regarding the medical practice of physicians. Miss Code Ann. §73-43-11 does not give the Board authority over non-physicians or the authority to dictate ownership of a medical clinic.

31.

The Mississippi State Board of Medical Licensure has significant market power to promulgate law affecting the practice of medicine as an "Agency" as that term is defined by the Mississippi Administrative Procedures Law codified at Miss. Code Ann. § 25-43-1.01, *et seq*. As such, the Board Rules and Regulations are "law" as defined by Miss. Code Ann. § 25-43-1.102(h) and (I).

32.

The Board engaged in activity suppressing competition and depriving consumers of choice by promulgating and enacting regulations excluding non-physicians from owning a "pain management medical practice". The amended rule also requires that a pain management clinic register and get certification from the Board before it may operate in Mississippi.

33.

The Board engaged in activity suppressing competition and depriving consumers of choice by enforcing nonexistent rules before granting certification to practice pain management.

34.

The Board engaged in activity suppressing competition and depriving consumers of choice by promulgating regulations that create special education and certification requirements for a "pain management medical practice" as arbitrarily defined by the board. These regulations do not apply equally to all physicians and violate Miss. Code Ann. § 73-49-1. As this statute requires, no state board that licenses health care providers "shall promulgate or enforce any rule or regulation affecting the practice of its licensees that does not apply equally to the practice of all of its licensees."

35.

The definition set forth in Rule 1.15 violates Miss. Code Ann. § 73-49-1. The Rule wrongfully creates a previously non-existing separation between physicians whose practice includes the treatment of patients that fall within the definition of pain-managed patients but whose patient population falls under the arbitrary fifty percent limit and a physician whose population exceeds fifty percent. The treatment of patients requiring pain management does not differ depending upon the number of patients seen by the physician. There is no rational basis for this Rule, and it does not apply equally to physicians who treat similar patients. Rule 1.15 is void as a matter of law and not enforceable.

36.

The Board is made up of nine (9) physicians, who participate in the provision of healthcare services in Mississippi. Even though the Board is made up of market participants it receives no supervision from a politically accountable state supervisor with veto power who is not a market participant.

37.

The Board's exclusion of non-physicians from owning medical practices defined by the Board as "pain management medical practices" does not qualify for a state action defense nor is it related to any efficiencies or other benefits to competition that would justify its harmful effect on completion.

38.

The Board is civilly liable for the antitrust violations of its members committed with actual or apparent authority.

### ANTICOMPETITIVE EFFECTS OF THE DENTAL BOARD'S ACTIONS

39.

Plaintiffs incorporate and restate the allegations of each preceding paragraph. The anticompetitive course of conduct of the Mississippi Board of Medical Licensure may be expected to continue in the absence of effective relief. As a consequence of the challenged actions and the current course of conduct of the Board, medical clinic owners, like Mr. Knight, have been forced to divest their ownership interests, close their clinics, or have been excluded from the market altogether thereby limiting consumer choice. Additionally, the pain management restrictions placed upon physicians do not apply to all physicians equally, thereby excluding some but not all physicians who proscribe pain management medication from the marketplace. The Board has also engaged in anticompetitive illegal behavior by excluding physicians from practicing "pain management" based on rules and regulations not yet enacted as demonstrated by the Board's refusal to certify Dr. Neal to practice pain management and forcing Axcess to temporarily close.

## INJUNCTIVE RELIEF

40.

Plaintiffs incorporate and restate the allegations of each preceding paragraph. Plaintiffs are entitled to a temporary and permanent injunction enjoining the Board from enforcing Rule 1.15 until such time as this Court has declared that the Board was/is without authority to implement Rule 1.15 and its predecessor amendments; that Rule 1.15 violates Section 1 of the Sherman Act. Plaintiffs are entitled to an injunction as there is a substantial likelihood of success on the merits; a substantial threat of irreparable injury to Plaintiffs exists if the injunction is not issued; the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and that the grant of an injunction will not disserve the public interest.

## VIOLATION OF STATE AND FEDERAL RIGHTS

41.

Plaintiffs incorporate and restate the allegations of each preceding paragraph. The combination, conspiracy, acts and practices described above constitute anticompetitive and unfair methods of competition in or affecting commerce in violation of Section 1 of the Sherman Act. Section 1 of the Act prohibits "[e]very contract, combination ... or conspiracy, in restraint of trade or commerce among the several States." 15 U.S.C. § 1. Such combination, conspiracy, acts and practices are continuing and will continue or recur in the absence of appropriate relief.

42.

15 U.S.C.A. § 15, provides a private cause of action for any person injured by a violation of the antitrust laws. Section 15 provides that any person so injured "shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

43.

Mr. Knight was injured by the illegal antitrust violations of the Mississippi Board of Medical Licensure. As a result of the anticompetitive and unfair methods of competition Mr. Knight was forced to divest his majority ownership interest in Axcess to Dr. Neal. Mr. Knight was not compensated for the majority interest in Axcess that he divested to Dr. Neal. The majority interest that Mr. Knight divested was worth in excess of $700,000.00.

44.

As a result of the Board's anticompetitive and unfair methods of competition Axcess was forced to close from May 15, 2013 to June 26, 2013. (As a result of the Board's illegal conduct, Axcess lost a significant portion of its patient base that it was unable to recover after reopening, resulting in lost profits.)

45.

As a result of the Board's anticompetitive and unfair methods of competition Plaintiffs have been forced to close Axcess without compensation resulting in damages to the Plaintiffs.

46.

The Board's anticompetitive and unfair methods of competition have no reasonable relation to any procompetitive purpose, and public safety and welfare concerns are not a defense to antitrust violations.

**WHEREFORE**, Plaintiffs pray that this Court enter an Order granting Plaintiffs the following relief:

1. Finding that the amendments to the Board Rules and Regulations as described herein were implemented by the Defendants and constitute anticompetitive and

unfair methods of competition in or affecting commerce in violation of Section 1 of the Sherman Act, codified as 15 U.S.C.A. § 1;

2. That the Board's conduct in implementing the amendments to the Board Rules and Regulations exceeded its statutory authority;

3. That the Plaintiffs are entitled to a temporary and permanent injunction enjoining the Board from enforcing Rule 1.15;

4. A Declaration that the amendments and Rule 1.15 are void as a matter of law and not enforceable;

5. That Mr. Knight is entitled to the fair market value of the majority interest in Axcess that he was forced to divest to Dr. Neal, in an amount not less than $700,000.00;

6. That Plaintiffs are entitled to recover any and all damages resulting from the closure of Axcess due to the wrongful and illegal acts of the Board.;

7. That pursuant to 15 U.S.C.A. §15 Plaintiffs are entitled to recover treble damages, all attorney fees and costs incurred in bringing this action;

8. That Plaintiffs are entitled to any and all additional relief they may be entitled to in the premises.

**THIS,** the 24th day of April, 2015.

                                                    **AXCESS MEDICAL CLINIC, INC.;**
                                                    **KENNETH CHARLES KNIGHT, AND**
                                                    **FITZHUGH LEE NEAL, JR., M.D.**

By:   /s/ Randall E. Day, III
           Randall E. Day, III
           *Attorneys for Plaintiffs*

Of Counsel:
MITCHELL DAY LAW FIRM, PLLC
RANDALL E. DAY, III (MSB #9722)
618 Crescent Boulevard, Suite 203
Ridgeland, Mississippi 39157
Telephone: (601) 707-4036
Facsimile: (601) 213-4116
rday@mitchellday.com